STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
SHAUN O. PARKER, RESPONDENT.
635 N.W.2d 454

Filed November 9, 2001.   No. S-01-1219.

Dennis G. Carlson, Counsel for Discipline, for relator.

Richard M. Jones, of Lee & Bucchino Law Firm, for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

On January 30, 2001, the Office of the Counsel for Discipline filed a disciplinary grievance against respondent, Shaun O. Parker, D.D.S. The grievance alleges respondent violated his oath of office as an attorney, Neb. Rev. Stat. § 7-104 (Reissue 1997), and the following provisions of the Code of Professional Responsibility: Canon 1, DR 1-102(A)(1) and (3), which provide as follows: "DR 1-102 Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (3) Engage in illegal conduct involving moral turpitude."

On September 7, 2001, respondent filed with this court an amended conditional admission of the disciplinary grievance pending against him. In accordance with the amended conditional admission, respondent admitted the following: Respondent was duly admitted to the practice of law in the State of Nebraska on September 22, 1994, and is subject to the Committee on Inquiry of the Second Disciplinary District. Respondent is not actively engaged in the practice of law in Nebraska and has been an inactive member of the Nebraska State Bar Association since his admission to the practice of law in Nebraska. Prior to January 23, 2001, respondent was authorized to practice dentistry in the State of Nebraska.

On January 16, 2001, a "Petition for Disciplinary Action" was filed against respondent with the Department of Health and

Human Services Regulation and Licensure of the State of Nebraska (DHHS) concerning respondent's license to practice dentistry. That same day, respondent filed an "Agreed Settlement" with DHHS and admitted the allegations in the petition for disciplinary action. On January 23, an "Order on Agreed Settlement" was entered by DHHS' chief medical officer, which order adopted the sanctions set forth in the agreed settlement.

In the agreed settlement, respondent admitted that from May through November 1999, he obtained quantities of the drug Vicoprofen for his personal use, by requesting drug samples from a drug wholesaler. The drug samples were delivered to the office where respondent practiced dentistry. Respondent removed the drug samples from the dental office and ingested them over time.

From September 1998 through March 2000, respondent obtained prescription drugs dispensed by Omaha area pharmacies pursuant to fraudulent prescriptions. Respondent had several methods for obtaining the drugs. One method consisted of enlisting employees at respondent's office to obtain drugs for him. Respondent would prescribe drugs in the names of employees, and the employees would pick up the drugs from pharmacies with the employees' claiming that they were patients, then deliver the drugs to respondent for his personal use. Another method involved respondent's having employees call pharmacies with prescriptions purportedly prescribed by other dentists, to be dispensed to respondent. The dentists listed as prescribers on pharmacy records, other than respondent, did not actually authorize the prescriptions.

In February 2000, respondent's employer confronted respondent regarding his drug use and gave him the option of either seeking chemical dependency treatment through DHHS' Licensee Assistance Program or being reported to DHHS for misconduct. Respondent chose to seek treatment through the Licensee Assistance Program.

In February 2000, respondent was evaluated for chemical dependency by the Licensee Assistance Program and was referred to an outpatient chemical dependency treatment program. In March, respondent began treatment through the outpatient program.

While in treatment with the outpatient program, respondent periodically went to the dental offices of his employer, outside of regular business hours, and used nitrous oxide. On July 29, 2000, the business manager at respondent's office found respondent in a dental chair self-medicating with nitrous oxide. That same day, respondent reported to an Omaha hospital and was admitted to the hospital's chemical dependency treatment center. Respondent subsequently sought chemical dependency treatment at the Talbott Recovery Campus in Atlanta, Georgia, which program included approximately 3 months of inpatient treatment.

Pursuant to the agreed settlement, respondent's dental license was placed on probation for a period of 5 years, on probationary conditions which we summarize as follows:

1. During the initial 3 months of probation, respondent was suspended from the practice of dentistry and was required to deliver his dental license to DHHS.

2. At the conclusion of the license suspension period, DHHS would issue to respondent a probationary license.

3. Respondent must abstain from personal use of controlled substances, prescription drugs, nitrous oxide, and all mood-altering substances, unless prescribed for or administered to respondent by a licensed physician or authorized licensed practioner for a diagnosed medical condition.

4. Respondent must abstain from the consumption of alcohol.

5. Respondent must agree to random body fluid or chemical testing at respondent's own expense, at such time and place as DHHS may direct. Respondent shall follow DHHS' instructions and directives for body fluid or chemical testing.

6. Respondent must report the use of any controlled substances, prescription drugs, or inhalants to DHHS on such frequency as is directed by DHHS.

7. Respondent must comply with all aftercare treatment recommendations made by his chemical dependency treatment provider, including any recommendations for counseling and attendance at support group meetings.

8. Respondent must attend a minimum of one Narcotics Anonymous or Alcoholics Anonymous or other chemical dependency support group meeting per week. If respondent's chemical

dependency treatment provider recommends additional attendance at support group meetings, respondent must follow such recommendations.

9. Respondent must advise all personal treating physicians and other treating practitioners, prior to treatment, of his prior history of chemical abuse and dependency and of all medications respondent may be taking at the time of treatment. Respondent authorizes all treating physicians and other treating practitioners to inform DHHS of all conditions for which respondent is being treated, including any drugs or medications, prescribed or over-the-counter, used in any treatment.

10. Respondent must not order controlled substances or nitrous oxide from drug wholesalers.

11. Controlled substances and nitrous oxide shall not be maintained on the premises at any location where respondent practices dentistry.

12. Respondent must maintain a separate log of controlled substance prescriptions sufficient to identify each prescription written or authorized by him during the probationary period by date, drug, patient, and prescription purpose. The prescription log shall be provided to DHHS upon request.

13. Respondent must provide notification of his license discipline to all dental practice partners, dental practice associates, any dental employer, and the licensing authority in any states where respondent may possess, apply for, or obtain an active dental license. Notification shall include providing copies of the petition for disciplinary action, the agreed settlement, and the order by the chief medical officer approving the agreed settlement.

14. If respondent is not self-employed, he must be employed as a dentist only by an employer who provides employer quarterly reports to DHHS. Employer quarterly reports shall be submitted to DHHS by respondent's employer, and shall include a description of respondent's work habits and continued abstinence from drugs, inhalants, and alcohol.

15. Any period during which respondent does not have an active Nebraska dental license, excluding the 3-month license suspension period, shall not reduce the probationary period or satisfy the terms and conditions of probation.

16. Respondent must submit written notification to DHHS within 15 days of any change in employment, employment status, residence, or telephone number.

17. Respondent must permit DHHS or representatives of the Board of Dentistry to conduct inspections of the premises where respondent practices dentistry.

18. Respondent must obey all state and federal laws and rules and regulations regarding the practice of dentistry.

19. Respondent must pay any costs associated with ensuring compliance with the agreed settlement, including, but not limited to, the costs of the random body fluid or chemical testing.

In his conditional admission entered into with the Office of the Counsel for Discipline, respondent admits that the above actions with regard to his drug use constitute violations of DR 1-102(A)(1) and (3) of the Code of Professional Responsibility and of his oath of office as an attorney.

Based on the conditional admission of respondent and the recommendation of the Office of the Counsel for Discipline, this court finds by clear and convincing evidence that respondent has violated his oath of office as an attorney and DR 1-102(A)(1) and (3). Accordingly, we hereby suspend respondent from the practice of law in the State of Nebraska for a period of 1 year, effective immediately, followed by a 2-year period of probation. During the periods of suspension and probation, respondent shall abide by and fully comply with all of the terms of the agreed settlement between respondent and DHHS, which terms are summarized above and are hereby incorporated by reference.

Additionally, during the periods of suspension and probation from the practice of law, respondent shall:

1. Attend a minimum of three meetings per week of Narcotics Anonymous, Alcoholics Anonymous, or Cocaine Anonymous.

2. Agree to work with and furnish the name and telephone number of a Narcotics Anonymous, Alcoholics Anonymous, or Cocaine Anonymous sponsor who is willing to disclose and confirm to the Nebraska Lawyers Assistance Program (NLAP), upon request, that he or she serves as respondent's sponsor.

3. Provide written verification on a monthly basis to NLAP of respondent's attendance at Narcotics Anonymous, Alcoholics Anonymous, or Cocaine Anonymous meetings.

4. Execute a release of information form authorizing DHHS and respondent's treatment provider to immediately report any violation of the agreed settlement to NLAP.

Costs and expenses are taxed to respondent. See Neb. Ct. R. of Discipline 23 (rev. 2001).

JUDGMENT OF SUSPENSION.